1

2

3

4

5

6

7

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10

11   STEVEN M. ZIMMERMAN,          )   Case No. SACV 07-0953 JC
                                    )
12                  Plaintiff,      )
                                    )   MEMORANDUM OPINION AND
13        v.                        )   ORDER OF REMAND
                                    )
14                                  )
     MICHAEL J. ASTRUE,             )
15   Commissioner of Social         )
     Security,                      )
16                                  )
                    Defendant.      )
17   _____

18

19   **I.    SUMMARY**

20        On August 22, 2007, plaintiff Steven M. Zimmerman ("plaintiff") filed a

21   Complaint seeking review of the Commissioner of Social Security's denial of

22   plaintiff's application for benefits.  The parties have filed a consent to proceed

23   before a United States Magistrate Judge.

24        This matter is before the Court on the parties' cross motions for summary

25   judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion").  The

26   Court has taken both motions under submission without oral argument.  See Fed.

27   R. Civ. P. 78; L.R. 7-15; August 27, 2007 Case Management Order, ¶ 5.

28   ///

                                    1

1   Based on the record as a whole and the applicable law, the decision of the
2   Commissioner is REVERSED AND REMANDED for further proceedings
3   consistent with this Memorandum and Opinion and Order of Remand because the
4   finding of the Administrative Law Judge ("ALJ") that plaintiff could perform
5   work that exists in significant numbers in the national economy was predicated
6   upon a vocational expert's response to incomplete hypothetical questions which
7   did not include all of plaintiff's limitations.

8   **II.    BACKGROUND AND SUMMARY OF ADMINISTRATIVE**
9   **DECISION**

10   On April 21, 2005, plaintiff filed an application for supplemental security
11   income and disability insurance benefits.  (Administrative Record ("AR") 39-41).
12   Plaintiff asserted that he became disabled on October 15, 2004, due to knee
13   problems, high blood pressure and the need of a hip replacement.  (AR 71).  The
14   ALJ examined the medical record and heard testimony from plaintiff, who was
15   represented by counsel, on March 8, 2007.  (AR 200-214).

16   On March 26, 2007, the ALJ determined that plaintiff was not disabled
17   through the date of the decision.  (AR 15).  Specifically, the ALJ found:
18   (1) plaintiff suffered from the following severe impairments:  necrosis of the right
19   hip, a small tear of the meniscus of the right knee, and history of alcohol abuse
20   (AR 13); (2) plaintiff's impairments, considered singly or in combination, did not
21   meet or medically equal one of the listed impairments (AR 13, 14); (3) plaintiff
22   retained the residual functional capacity to perform sedentary work (AR 15);
23   (4) plaintiff did not retain the residual functional capacity to perform his past
24   relevant work (AR 15); and (5) there are a significant number of jobs in the
25   national economy that plaintiff could perform, e.g., telephone information clerk,
26   assembler (AR 15).

27   The Appeals Council denied plaintiff's application for review.  (AR 3-5).
28   ///

1    **III.    APPLICABLE LEGAL STANDARDS**

2         **A.     Sequential Evaluation Process**

3         To qualify for disability benefits, a claimant must show that he is unable to

4    engage in any substantial gainful activity by reason of a medically determinable

5    physical or mental impairment which can be expected to result in death or which

6    has lasted or can be expected to last for a continuous period of at least twelve

7    months.  Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citing 42 U.S.C.

8    § 423(d)(1)(A)).  The impairment must render the claimant incapable of

9    performing the work he previously performed and incapable of performing any

10   other substantial gainful employment that exists in the national economy.  Tackett

11   v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

12        In assessing whether a claimant is disabled, an ALJ is to follow a five-step

13   sequential evaluation process:

14        (1)    Is the claimant presently engaged in substantial gainful activity?  If

15               so, the claimant is not disabled.  If not, proceed to step two.

16        (2)    Is the claimant's alleged impairment sufficiently severe to limit

17               his ability to work?  If not, the claimant is not disabled.  If so,

18               proceed to step three.

19        (3)    Does the claimant's impairment, or combination of

20               impairments, meet or equal an impairment listed in 20 C.F.R.

21               Part 404, Subpart P, Appendix 1?  If so, the claimant is

22               disabled.  If not, proceed to step four.

23        (4)    Does the claimant possess the residual functional capacity to

24               perform his past relevant work?[1]  If so, the claimant is not

25               disabled.  If not, proceed to step five.

26   ///

27   _____

28        [1]Residual functional capacity is "what [one] can still do despite [ones] limitations" and
represents an "assessment based upon all of the relevant evidence."  20 C.F.R. §§ 404.1545(a),
416.945(a).

1    (5)    Does the claimant's residual functional capacity, when

2            considered with the claimant's age, education, and work

3            experience, allow him to adjust to other work that exists in

4            significant numbers in the national economy?  If so, the

5            claimant is not disabled.  If not, the claimant is disabled.

6   Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th

7   Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920).

8          The claimant has the burden of proof at steps one through four, and the

9   Commissioner has the burden of proof at step five.  Bustamante v. Massanari, 262

10  F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett); see also Burch, 400 F.3d at 679

11  (claimant carries initial burden of proving disability).  If, at step four, the claimant

12  meets his burden of establishing an inability to perform past work, the

13  Commissioner must show, at step five, that the claimant can perform some other

14  work that exists in "significant numbers" in the national economy, taking into

15  account the claimant's residual functional capacity, age, education, and work

16  experience.  Tackett, 180 F.3d at 1100 (citing 20 C.F.R § 404.1560(b)(3)); 42

17  U.S.C. § 423(d)(2)(A).  The Commissioner may satisfy this burden, depending

18  upon the circumstances, by the testimony of a vocational expert or by reference to

19  the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P,

20  Appendix 2 (commonly known as "the Grids").  Osenbrock v. Apfel, 240 F.3d

21  1157, 1162 (9th Cir. 2001) (citing Tackett).

22         When a claimant suffers only exertional (strength-related) limitations, the

23  ALJ must consult the Grids.  Lounsburry v. Barnhart, 468 F.3d 1111, 1115 (9th

24  Cir.), as amended (2006).  When a claimant suffers only non-exertional

25  limitations, the Grids are inappropriate and the ALJ must rely on other evidence.

26  Id.  When a claimant suffers from both exertional and nonexertional limitations,

27  the ALJ must first determine whether the Grids mandate a finding of disability

28  with respect to exertional limitations.  See Lounsburry, 468 F.3d at 1116; Cooper

4

1  v. Sullivan, 880 F.2d 1152, 1155 (9th Cir. 1989).  If so, the claimant must be

2  awarded benefits.  Cooper, 880 F.2d at 1155.  If not, and if the claimant suffers

3  from significant and sufficiently severe non-exertional limitations, not accounted

4  for in the Grids, the ALJ must take the testimony of a vocational expert.[2]  Hoopai

5  v. Astrue, 499 F.3d 1071, 1076 (9th Cir. 2007).

6      The vocational expert's testimony may constitute substantial evidence of a

7  claimant's ability to perform work which exists in significant numbers in the

8  national economy when the ALJ poses a hypothetical question that accurately

9  describes all of the limitations and restrictions of the claimant that are supported

10  by the record.  See Tackett, 180 F.3d at 1101; see also Robbins v. Social Security

11  Administration, 466 F.3d 880, 886 (9th Cir. 2006) (finding material error where

12  the ALJ posed an incomplete hypothetical question to the vocational expert which

13  ignored improperly-disregarded testimony suggesting greater limitations); Lewis

14  v. Apfel, 236 F.3d 503, 517 (9th Cir. 2001) ("If the record does not support the

15  assumptions in the hypothetical, the vocational expert's opinion has no evidentiary

16  value.").

17      **B.    Standard of Review**

18      Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of

19  benefits only if it is not supported by substantial evidence or if it is based on legal

20  error.  Robbins, 466 F.3d at 882 (citing Flaten v. Secretary of Health & Human

21  Services, 44 F.3d 1453, 1457 (9th Cir. 1995)).  Substantial evidence is "such

22  relevant evidence as a reasonable mind might accept as adequate to support a

23  conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations and

24  quotations omitted).  It is more than a mere scintilla but less than a preponderance.

25

26

27  [2]An ALJ is required to seek the assistance of a vocational expert when the non-exertional
limitations are at a sufficient level of severity such as to the make the Grids inapplicable to the

28  particular case.  Hoopai v. Astrue, 499 F.3d 1071, 1076 (9th Cir. 2007).  The severity of
limitations at step five that would require use of a vocational expert must be greater than the
severity of impairments determined at step two.  Id.

5

1  Robbins, 466 F.3d at 882 (citing Young v. Sullivan, 911 F.2d 180, 183 (9th Cir.
2  1990)).

3      To determine whether substantial evidence supports a finding, a court must
4  "'consider the record as a whole, weighing both evidence that supports and
5  evidence that detracts from the [Commissioner's] conclusion.'" Aukland v.
6  Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d
7  953, 956 (9th Cir. 1993)).  If the evidence can reasonably support either affirming
8  or reversing the ALJ's conclusion, a court may not substitute its judgment for that
9  of the ALJ.  Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457).

10 **IV.    DISCUSSION**

11      Plaintiff contends that the ALJ, in concluding that plaintiff could perform
12  work that exists in significant numbers in the national economy, improperly relied
13  upon the vocational expert's response to incomplete hypothetical questions which
14  did not include all of plaintiff's limitations.  (Plaintiff's Motion at 2-4).  This
15  Court agrees.

16      In this case, the ALJ determined that the Grids indicated a finding of "not
17  disabled" for plaintiff.  The ALJ then expressly and indisputably relied upon the
18  vocational expert's responses to the ALJ's hypothetical questions in making the
19  ultimate step five determination that plaintiff could work as a telephone
20  information clerk or an assembler.[3]  (AR 14).  Accordingly, the propriety of the

21  _____

22      [3]The ALJ stated:

23
24      Using Rule 201.27 of Table No. 1 of Appendix 2 as a framework for decisionmaking, a
        finding of "not disabled" is indicated.  Because this rule is used as a framework, further
        testimony from the vocational expert was taken in order to more clearly assess the effects
25      of the non-exertional limitations on the occupational base and to provide evidence of
        other jobs existing in the national economy which the claimant could perform . . . It was
26      the vocational expert's opinion that the hypothetical individual could perform the
        following jobs existing in the national economy:  (1) telephone information clerk with
27      94,000 jobs existing in the national economy, and (2) assembler with 55,000 jobs existing
28      in the national economy.  [¶]  Therefore, based on the testimony of the vocational expert
                                                                            (continued...)

6

1 | ALJ's finding at step five is dependent upon whether the vocational expert in fact
2 | testified that a hypothetical individual with all of plaintiff's limitations and
3 | restrictions as determined by the ALJ, could perform the identified jobs.  See
4 | Embry v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988) ("Hypothetical questions
5 | posed to the vocational expert must set out *all* the limitations and restrictions of
6 | the particular claimant, including, for example, pain and an inability to lift certain
7 | weights.") (emphasis in original) (citation omitted).
8 | The ALJ found that plaintiff:  (1) could lift and carry 10 pounds frequently
9 | and 20 pounds occasionally; (2) could stand and/or walk six hours in an eight-hour
10 | workday; (3) could sit six hours in an eight-hour workday; (4) was limited to
11 | occasional climbing, balancing, stopping, and kneeling; (5) could frequently
12 | crouch and crawl; and (6) was limited in the use of his right lower extremity.  (AR
13 | 13, 14).
14 | The ALJ's first hypothetical included all of the above-mentioned limitations
15 | listed above except the limitation in the use of the right lower extremity.[4]  (AR

16 | ───────────

17 | [3](...continued)
18 | and using Rule 201.27 of Table No. 1 of Appendix 2 as a framework for decisionmaking
   | (sic), the ALJ finds that there are a significant number of jobs existing in the national
19 | economy which the claimant could perform.

20 | (AR 13-14).
21 |
   | [4]The hypothetical claimant described by the ALJ could:
22 |
23 | sit for one hour at a time and can sit for a total, maximum, for six hours during the work
   | day . . . can stand for no more than 20 minutes at a time and stand for no more than two
24 | hours during a workday; can lift 20 pounds on occasion and 10 pounds frequently; is
   | limited to only occasionally climbing ramps and stairs, and totally precluded from
25 | ladders, ropes and scaffolds . . . He can only occasionally balance, only occasionally
26 | stoop, and only occasionally kneel.  He is . . . limited to only moderate exposure to
   | temperature extremes.
27 |
28 | (AR 211-12).  This first hypothetical question also includes a limitation – a 20 minute limitation
   | on standing – which is not included in the ALJ's assessment of plaintiff's residual functional .

(continued...)

7

1   211-12).  The vocational expert testified that the first hypothetical claimant would

2   be precluded from all of plaintiff's past relevant work and all other work.  (AR

3   212).

4        In the second hypothetical, the ALJ asked, "All right, any sedentary jobs,

5   full range of sedentary work?"  (AR 212).  The vocational expert responded that

6   the second hypothetical individual could not perform a full range of sedentary

7   work, but could perform the two sedentary, unskilled jobs of telephone

8   information clerk and assembler.  (AR 212-13).

9        As neither of the pertinent hypothetical questions posed to the vocational

10  expert included plaintiff's limitation regarding the use of his right lower extremity,

11  and as the ALJ's determination that plaintiff could perform work that existed in

12  significant numbers in the national economy was predicated upon the vocational

13  expert's responses to such hypothetical questions, substantial evidence does not

14  support the ALJ's conclusion that plaintiff could perform a significant number of

15  jobs that exist in the national economy.

16       Accordingly, a remand is appropriate so that the ALJ can reassess whether

17  plaintiff can perform a significant number of jobs that exist in the national

18  economy either by eliciting from a vocational expert a response to a complete

19  hypothetical or based upon other substantial evidence.

20  ///

21  ///

22  ///

23

24

25       [4](...continued)
    capacity.  If the ALJ intended to equate "limited use of the right lower extremity" with a twenty

26  minute limitation on standing, he did not so state.  If that was the ALJ's intention, he should so
    state on remand and should ensure that this fact is clear in any hypothetical question.  On

27  remand, the ALJ may also wish to take note of defendant's suggestion  herein that the ALJ
    intended to find that plaintiff could stand and walk two hours, rather than six hours in an eight

28  hour work day, based upon the ALJ's discussion with the vocational expert and the ALJ's usage
    of the sedentary Medical Vocation Guideline.  (Defendant's Motion at 4 n.4).

1    **V.    CONCLUSION**[5]

2          For the foregoing reasons, the decision of the Commissioner of Social

3    Security is reversed in part, and this matter is remanded for further administrative

4    action consistent with this Opinion.[6]

5          LET JUDGMENT BE ENTERED ACCORDINGLY.

6    DATED:   July 2, 2008

7                                                    _____/s/_____

8                                                    Honorable Jacqueline Chooljian
                                                     UNITED STATES MAGISTRATE JUDGE
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23
          [5]The Court need not, and has not adjudicated plaintiff's other challenge to the ALJ's
24   decision, except insofar as to determine that a reversal and remand for immediate payment of
     benefits would not be appropriate.
25

26        [6]When a court reverses an administrative determination, "the proper course, except in rare
     circumstances, is to remand to the agency for additional investigation or explanation."
27   Immigration & Naturalization Service v. Ventura, 537 U.S. 12, 16 (2002) (citations and
     quotations omitted).  Remand is proper where, as here, additional administrative proceedings
28   could remedy the defects in the decision.  McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir.
     1989).